

**EXHIBIT B**

# MASTER SERVICES AGREEMENT

This Master Services Agreement (the "Agreement") is entered as of the _____ day of _____ (the "Effective Date") by and between Ladder Now, LLC ("Ladder Now"), with a business address of 3600 Chamberlain Lane Suite 736 Louisville KY 40241, and;

**Name:** Dallas Strasser

**Address:** 4800 southern hills dr apartment 722, Sioux City, IA, 51106

*("Contractor" and, together with Ladder Now, collectively, the **"Parties"**).*

1. **THE SERVICES:** Ladder Now desires to retain Contractor to perform Services (as defined below) from time to time pursuant to the terms and conditions of this Agreement. The services contemplated by this Agreement include access, inspection, and damage assessment of the roof and other potentially affected areas of the designated work site (the "Site") utilizing such damage assessment tools as may be designated by Ladder Now and/or the on-site adjuster, as applicable, and complying with Ladder Now's and/or the on-site adjuster's instructions, as applicable, regarding the proper protocol for completing damage assessment forms or other claim documentation (collectively, the "Services"). Each individual project for which Ladder Now retains the Services of Contractor shall be deemed a separate engagement ("Engagement") governed by the terms of this Agreement. Contractor shall arrive at or before the scheduled time for all Service appointments with all necessary equipment and supplies. Any anticipated difficulty in arriving to a scheduled appointment on time shall be reported immediately to Ladder Now. Contractors (and/or subcontractors) shall maintain a professional demeanor, appearance and wear appropriate attire during each Service appointment, which attire shall include khaki type slacks, footwear appropriate for the Services, and a collared shirt supplied by Ladder Now bearing the Ladder Now logo. Inappropriate attire includes blue jeans, sweatpants, shorts, or clothing that is excessively worn, torn, faded, ripped, or frayed. Any item bearing the Ladder Now logo shall only be displayed during Service appointments for ladder Now and shall be removed promptly following the completion of the appointment.

2. **SERVICE FEES:** Unless otherwise agreed to between the Parties in writing, ladder Now shall pay Contractor the total sum of the Carrier Fee Schedule for Services Provided _DS_ **(Initial)**, (the "Service Fee") for the satisfactory performance of all Contractor's Services for each Engagement under this Agreement, which Service Fee includes all costs and expenses incurred by Contractor in the performance of its obligations under this Agreement. The Service Fee is to be invoiced upon completion of the Engagement unless otherwise stated herein or agreed upon in writing. All Services performed hereunder shall be in accordance with Ladder Now's standard Terms and Conditions as set forth on the reverse side of this Agreement, which Terms and Conditions are incorporated by reference herein.

3. **INDEPENDENT CONTRACTOR:** Contractor shall be and remain an independent contractor to Ladder Now. This Agreement shall not be construed as establishing a general agency, employment relationship, partnership, or joint venture relationship between Contractor and Ladder Now. Contractor has, and shall have, no power, nor will Contractor represent that it has any power, to bind Ladder Now or to assume or create any obligation or responsibility on behalf of Ladder Now.

**Initial:** _DS_

4. **INSURANCE:** During the term of this Agreement and the continuance of Contractor's liability hereunder, Contractor shall maintain insurance, in the kinds and in the amounts specified below, with insurers of recognized responsibility, licensed to do business in the state(s) In which the

   Services are provided and/or the state of Contractor's incorporation or formation: **(a)** <u>Workers' Compensation</u> coverage In at least the minimum amounts required by the governing statues in the state in which the Services are performed and/or the state of Contractor's incorporation or formation; **(b)** <u>Comprehensive or Commercial General and Contractual Liability ("CGL") Insurance</u> coverage with limits of: (1) at least $1,000,000.00 per each occurrence combined single limit coverage for bodily injury (including death) and property damage and (2) at least $2,000,000.00 general aggregate. (3) at least a $2,000,000.00 Products/Completed Operations aggregate. Subcontractor must include within their policy primary & noncontributory coverage in favor of ladder Now. Such CGL coverage shall also include a waiver of subrogation rights in connection with Ladder Now and a cross-liability provision and must specifically include coverage for: **(A)** any liability assumed by Contractor under this Agreement; **(B)** operations in progress; and **(C)** any liability arising from

   Contractor's use of subcontractors, agents and/or consultants; **(d)** <u>Comprehensive Motor Vehicle Insurance</u> coverage with limits of at least

   $500,000.00 per each occurrence combined single limit coverage for bodily injury {including death) and property damage. Coverage for all owned, hired and non-owned vehicles must be Included in under this coverage. A combination of primary and excess/umbrella liability policies will be acceptable as a means to meet the above minimum requirements. Before work is assigned or completed, Contractor shall furnish standard "Accord" insurance certificates or comparable forms of proof acceptable to Ladder Now indicating the required coverages. In addition, Contractors shall endorse their insurance policy to name Ladder Now, LLC as an Additional Named Insured proving coverage at least as broad as the Additional Insured Endorsement form CG2010 & CG2037, or equivalent. Contractor shall thereafter throughout the Term of this Agreement provide Ladder Now with at least thirty (30) days advance written notice of any cancellation or reduction of any of the above coverages. Failure to maintain the coverages required by this Section 4 shall constitute a material breach of this Agreement and, notwithstanding any other term or condition of this Agreement, shall entitle Ladder Now to terminate this Agreement immediately upon written notice to Contractor and without further liability to Contractor. Contractor holds harmless Ladder Now and Ladder Now's customers from any responsibilities due to accident, damage or loss to include any breach in Contractor's insurance coverage. No contractor shall perform any work for Ladder Now without full coverage and will update Ladder Now's HR compliance office with updated insurance

   certs every 30 days. Ladder Now reserves to right to require updates on coverage randomly and periodically. **CONTRACTOR HAS READ AND UNDERSTANDS THIS AGREEMENT, INCLUDING THE GOVERNING TERMS AND CONDITIONS, AND AGREES TO SUPPLY AND PERFORM THE SERVICES AS STATED.**

| **CONTRACTOR** | **LADDER NOW, LLC** |
|---|---|
| Sign: *[signature]* | By: |
| Name: Dallas Strasser | Name: |
| Title: Contractor | Title: |
| Date: 7/24/2022 | Date |

Initial: *DS*

5. **TERM:** This Agreement shall be binding upon the Effective Date and shall expire upon the earlier of (a) Contractor's completion of all Services to Ladder Now's satisfaction; or {b) Ladder Now's termination of this Agreement as set forth below.
6. **TERMINATION:** Either Party may at any time terminate this Agreement, with or without cause, upon not less than thirty {30) days advance written notice to the other Party. Upon such written notification of termination by Ladder Now to Contractor, unless otherwise instructed by Ladder Now In writing, Contractor will immediately cease all Services provided under this Agreement and Ladder Now's only obligation to Contractor shall be to pay an equitably prorated portion of the Service Fees for any pre-approved Services completed through the effective date of such termination.
7. **STANDARD OF CARE:** In performing Services for Ladder Now hereunder, Contractor shall exert its best commercial efforts and apply the highest level of professional skill on Ladder Now's behalf so as to fully complete the Services in a workmanlike manner according to the applicable standards of Contractor's profession. All Contractor's employees, agents, and/or subcontractors assigned by Contractor to provide Services hereunder shall meet the aforementioned standard of care, hold any and all required professional licenses, and be fully credentialed in the jurisdictions in which the Services are to be rendered.
8. **OWNERSHIP OF DELIVERABLES:** Contractor recognizes that in its performance of Services governed under this Agreement, it is acting on behalf of Ladder Now and that so long as Ladder Now is not in default hereunder, and all sums then due have been paid to Contractor, all deliverable items, reports, analysis, logs, work product, field data, field notes, market test data, calculations, estimates, briefing materials, conclusions, and related intellectual property rights (including, but not limited to, any and all inventions) (collectively the "Deliverables") developed as a result of the performance of Contractor's Services shall be the sole and exclusive property of Ladder Now, without restriction.
9. **UNRESTRICTED RIGHT TO Use SERVICES RESULTS:** Unless previously disclosed by Contractor in writing prior to the commencement of Services for any particular project, Contractor warrants that Ladder Now may use all information, data, materials, and Deliverables submitted and disclosed to Ladder Now by Contractor pursuant to any Services governed under this Agreement free from all claims and restrictions pertaining to the ownership, use, publication, and sale of such materials. All intellectual property created by, contributed to, conceived by, or made by Contractor hereunder will not Infringe, misappropriate, or include the intellectual property of any third-party, unless licenses for such use have been obtained by Contractor and Contractor has disclosed such third-party Intellectual property rights to Ladder Now as stated above.
10. **CONFIDENTIALITY:** The Parties acknowledge that as a result of this Agreement they may have access to certain confidential information of the other Party, including pricing; internal business information; strategic and staffing plans and practices; business strategies; margins; spend rates; discounting, marketing, promotional and sales plans, practices and programs; training practices and programs; cost, rate and pricing structures; and accounting and business methods (collectively "Confidential Information"). Each Party, as a potential "Receiving Party" of the "Disclosing Party's'1 Confidential Information, acknowledges that the Disclosing Party's Confidential Information will be the property solely of such Disclosing Party and will constitute trade secrets and proprietary Information of the Disclosing Party and that the Receiving Party's knowledge of the Disclosing Party's Confidential Information may enable the Receiving Party to cause the Disclosing Party irreparable harm upon the unauthorized disclosure of such matters. Each Party, as a Receiving Party, hereby covenants and agrees that it will not use or appropriate for its own behalf, or disclose or communicate, directly or indirectly, any of the Disclosing Party's Confidential Information to any individual, firm, company or other entity or person without the Disclosing Party's prior written consent. Except as provided in this Agreement, the Receiving Party shall not copy or reproduce or otherwise appropriate any Confidential Information owned by such Disclosing Party and shall take all commercially reasonable steps required by the Disclosing Party to protect such Confidential Information. The foregoing obligations of confidentiality do not apply to any information that: {a} is made publicly known without fault of the Receiving Party; (b) is lawfully disclosed to the Receiving Party by a third party having the right to disclose the information; (c) is produced by the Receiving Party pursuant to legal process, or under a court or government agency order to be produced, provided that the Receiving Party shall immediately notify the Disclosing Party of the request or order so that the Disclosing Party has a timely opportunity to seek a protective order or other appropriate relief; or {d) is developed by the Receiving Party independent of the receipt of the Confidential Information.

Initial: _DS_

11. **INDEMNIFICATION BY CONTRACTOR:** Contractor shall timely indemnify and hold harmless Ladder Now and Ladder Now's former, current and future directors, officers, employees, parent companies), subsidiaries and affiliates and customers {collectively the "Indemnified Parties") from and against any and all liabilities, claims, costs, expenses, damages and judgments arising out of or resulting from the performance of the Services governed hereunder; provided that such liabilities, claims, costs, expenses, damages and/or judgments are caused or contributed to by a negligent or willful act or omission of Contractor or its employees, subcontractors, agents or representatives. All indemnities set forth in this Agreement shall include, but not be limited to, the payment of reasonable court costs and expenses, attorneys' fees {of counsel chosen by ladder Now, as and when incurred), and expert witness fees. Under all circumstances, the Indemnified Parties shall have the right to select their counsel, control their defense, and to be the sole judge of the acceptability of any compromise or settlement. If a claim covered by the foregoing indemnities is asserted against an Indemnified Party, the Indemnified Party shall promptly give Contractor written notice thereof. The Indemnified Party shall extend its full cooperation in connection with the defense provided by Contractor, subject to reimbursement for all out-of-pocket expenses incurred by the Indemnified Party. If Contractor fails to defend a claim within a reasonable time, the Indemnified Party shall be entitled to assume defense of the claim and Contractor shall be bound by the results obtained by the Indemnified Party with respect to such claim.
12. **LIMITATION OF LIABILITY:** UNDER NO CIRCUMSTANCES SHALL EITHER PARTY BE LIABLE TO THE OTHER FOR SPECIAL, CONSEQUENTIAL, EXEMPLARY, PUNITIVE OR INCIDENTAL DAMAGES, INCLUDING LOST OR ANTICIPATED PROFITS, ARISING FROM ANY CLAIM RELATING TO THIS AGREEMENT, WHETHER SUCH CLAIMS ARE BASED ON WARRANTY, CONTRACT, TORT (INCLUDING NEGLIGENCE OR STRICT LIABILITY) OR OTHERWISE.
13. **WAIVER:** The failure of a Party to require the performance of any term of this Agreement, or the waiver by a Party of any breach of this Agreement, shall not prevent a subsequent enforcement of such terms, nor be deemed a waiver of any subsequent breach.
14. **SEVERABILITY:** If any provision of this Agreement shall be held or deemed to be illegal, inoperative, or unenforceable by a court or other tribunal of competent jurisdiction, the same shall not affect any other provision of this Agreement, nor render any other provision invalid, inoperative, or unenforceable to any extent whatsoever.
15. **EXECUTION OF AGREEMENT:** This Agreement may be executed in counterparts, each of which shall be deemed an original, with the same effect as if the signature thereto and hereto were upon the same instrument.
16. **SURVIVAL OF TERMS:** Neither expiration nor termination of this Agreement for any reason shall release either Party from liabilities or obligations set forth in this Agreement which: (a) the Parties have expressly agreed will survive such expiration or termination or (b) remain to be performed or by their nature would be intended to be applicable following any such expiration or termination.

Initial: *DS*

17. **WRITTEN NOTICES:** Written notices (other than routine business communications) required or made under the terms of this Agreement shall be deemed received two (2) days after being mailed with First Class Postage by U.S. Mail, or one (1) day after being sent by overnight carrier, to the addresses set forth in the Preamble.

18. **GOVERNING LAW AND VENUE:** This Agreement and each Party's performance hereunder shall be governed and construed in accordance with the laws of the Commonwealth of Kentucky, without reference to Kentucky's conflict of laws principles. The exclusive venue for any action arising out of this Agreement shall be the state or federal court(s) of competent subject matter jurisdiction sitting in Louisville, Jefferson County, Kentucky. The Parties consent to personal jurisdiction in the Commonwealth of Kentucky and waive any defense based upon lack of personal jurisdiction of *forum non-convenient*. Both parties hereby irrevocably waive the right to a trial by jury for any and all controversies arising between the Parties under this Agreement. All such matters shall be tried, if at all, to the court.

19. **HEADINGS:** The headings set forth herein are for the convenience of the Parties only and shall be disregarded in construing this Agreement.

20. **ENTIRE AGREEMENT:** This Agreement constitutes the entire understanding of the Parties relating to the subject matter hereof and supersedes all prior and contemporaneous agreements and understandings, whether oral or written. The terms of this Agreement may be modified only by a subsequent written instrument executed by an authorized representative of each of the Parties.

**Initial Receipt and Acknowledgement:** _DS [signature]_



## INDEPENDENT CONTRACTOR CONFIDENTIALITY AGREEMENT

- In conjunction with the provision of certain contracted services for Ladder Now, LLC ("Ladder Now"), and in consideration for the compensation I receive for such services, I acknowledge that I will have access to, and assist in the development of, confidential and proprietary information (collectively, "Confidential Information") belonging solely and exclusively to Ladder Now. I further acknowledge that, given the importance of this Confidential Information, the execution of this Independent Contractor Confidentiality Agreement (this "Agreement") is a condition of my continued commercial relationship with Ladder Now.

- I understand that Confidential Information shall include all oral, written, graphic or machine-readable information to which I am provided access or otherwise assist in the development of, including, but not limited to, customer lists, pricing information, trade secrets or methods, business policies, business volumes, product information, personnel information and files, formulas, business strategies, manuals of instruction, reports, research, records, catalogs, samples, advertising information, invoices, quotations or other forms, and/or any other confidential or proprietary information of any type, including information which relates to patents, patent applications, research, developments, inventions, processes, designs, drawings, engineering, formula, markets, software (including source and object code), hardware configuration, computer programs, passwords and access codes, algorithms, former, current and potential agreements with third-parties, information regarding salary and benefits, and/or other financial information.

- I will not, without Ladder Now's prior written consent, disclose or permit disclosure of Ladder Now's Confidential Information to any person or entity. In this regard, I will take all reasonable measures to protect the secrecy of and avoid disclosure of Ladder Now's Confidential Information in order to prevent Ladder Now's Information from falling into the public domain or the possession of competitors or other unauthorized persons. I will immediately notify Ladder Now of any actual or suspected misuse, misappropriation or unauthorized disclosure of Ladder Now's Confidential Information which may come to my attention.

- Upon the termination of the Independent Contractor Agreement for whatever reason, I will immediately return all Confidential Information to Ladder Now and shall not keep any copies of the same.

- I acknowledge that my failure to comply with any of the terms of this Agreement will result in a breach of the Independent Contractor Agreement. I further acknowledge that any breach of this Agreement will irreparably harm Ladder Now's business and that Ladder Now will not have an adequate remedy at law in the event of such non-compliance. Therefore, I agree that Ladder Now shall be entitled to obtain immediate injunctive relief from any court of competent jurisdiction against acts of non-compliance, without the posting of bond or other security, in addition to whatever other remedies Ladder Now may have at law or in equity or under the Independent Contractor Agreement.

- I certify that I have read this Agreement, I understand it, and I agree to comply with its terms and conditions.

**Date:** 7/24/2022

**Signature:** *[signature]*

**Printed Name:** Dallas Strasser